UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION


JAMES JONES                                                                                         PETITIONER

V.                                                              CIVIL ACTION NO.1:04CV375-GHD-JAD

STATE OF MISSISSIPPI                                                                         RESPONDENT

## REPORT AND RECOMMENDATION

James L. Jones was convicted of murder and armed robbery in the Circuit Court of Attala County, Mississippi. He was sentenced to two consecutive life sentences on June 13, 2001. His conviction was affirmed by the Mississippi Court of Appeals on March 25, 2003. He filed a petition for certiorari with the Mississippi Supreme Court which was denied on December 4, 2003.

Jones then filed his federal habeas petition assigning the four grounds raised in his direct appeal and additionally alleging that his trial counsel provided ineffective assistance of counsel. This court required Jones to amend his complaint to dismiss the count regarding ineffective assistance of counsel because it had not been exhausted in the state court.

The undersigned has considered the limited scope of the federal court's review, given that these claims have already been rejected by the Mississippi Supreme Court on the state petition for writ of certiorari. 28 U.S.C. § 2254(d) provides:

> (D) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Since any factual findings of the state appellate courts are presumed correct, the burden is upon the petitioner to prove by clear and convincing evidence any factual errors. 28 U.S.C. §2254(e)(1).

Summary of the evidence

The Mississippi Court of Appeals opinion provides a synopsis of the proof against Jones.

> On or about June 21, 2000, the appellant and four friends went to the home of Calvin Haymon in Kosciusko. Jones knocked on the door and Haymon's girlfriend, Angela Barton, answered the door. Jones asked her for some "weed" at about the time Haymon drove up to the house with Yvonne Ellis. Haymon and Ellis had exited the car and were standing at the rear of the car when one of Jones's friends, Vincent Butler, approached the two and pulled two guns. Jones then approached and demanded money from Ellis and Haymon and told them to get into the car. Shortly thereafter, Yvonne Ellis's brother, Daniel Ellis, drove up, causing Butler to throw his guns at Jones, who was now seated in the driver's seat of the vehicle. Yvonne Ellis took off running and later found out that his brother, Daniel, had been shot. Daniel later died from his wounds. Haymon was also found shot dead later that night on a rural road. *Jones v. State,* 856 So. 2d 389, 391, 392(Miss. App. 2003)

Herbert Dew, an investigator with the Kosciusko Police Department, testified that Jones was identified as a suspect when eye witness Daniel Summerlin named Jones as the individual who shot Daniel Ellis. Jones' car was found in the dead end street that was the site of the first killing. Dew testified to finding a striped polo shirt in the back of Jones' car. It had blue, black, and white horizontal stripes, with narrow brown stripes. The shooter was described as very tall and very thin, wearing a white t-shirt and jeans. Jones is 6'4" and very thin. Parks, another of Jones' friends is 5'6" with a medium build. Butler was of medium height and build. The other two individuals who arrived at Haymon's home with Jones are women. There was a street light at the location of the shooting and it was operational on that night.

Angela Barton, who already knew Jones, said that he was wearing a polo shirt with blue and black horizontal stripes when she opened the door. She was in her bedroom when she heard loud

music. She saw James Jones, then in a white t-shirt stick his arm in the Ellis vehicle and fire. He was directly below the street light at the time. She immediately called her neighbor Rochelle George, who confirmed that she had also witnessed the shooting and had already called the police. She was cross-examined at some length about perceived inconsistencies between her testimony and her statement to the police. She conceded that some of the contents of her statement were based on her understanding of what had happened, not on her personal knowledge.

Mic Lawrence an investigator with the Mississippi Highway Patrol went to the scene of Haymon's murder. He recovered the murder weapon. Based on an interview with Yvonne Ellis, an effort was made to locate Ellis' car which had been removed from the scene. The car was later located at in Ackerman, Mississippi.

Yvonne Ellis testified that Vincent Butler came up to him and Haymon with two guns drawn. Jones, whom Ellis had known for several years, demanded that Haymon and Ellis give him their money. Ellis complied giving Jones $16.00. Haymon kept talking at which point Jones demanded that Haymon take them to his stash of marijuana. While Jones and his cohorts were trying to get Haymon to get in the back seat, Daniel Ellis arrived with his music blaring. When the spotlights of the car shone on Butler, he dropped both of his guns into Jones' lap. Yvonne took this opportunity to run. Running past his brother he told him to back up and that a robbery was in progress. He continued running as he could tell that someone was giving chase. Shortly thereafter he heard gunfire. He did not see who was chasing him, nor witness his brother being shot.

Rochelle George testified that she witnessed the shooting of Daniel Ellis. She testified that Jones had the same general build as the shooter. She said the shooter was wearing blue jeans, a

3

white t-shirt and white tennis shoes. She thought she heard 8 or 9 shots. The shooter had to pull up his pants because they were very loose as he entered Yvonne's back drivers-side door.

Dr. Stephen Hayne testified that Haymon died as a result of 4 gunshot wounds, each of which was lethal. Daniel Ellis was shot 7 times, with three of the wounds being lethal.

Daniel Summerlin testified that he was in front of his home when he witnessed Daniel Ellis being shot. He had walked out of his house when he heard Ellis' loud music. He recognized Ellis' SUV, having known the victim for several years. He was about 15 feet from Ellis' SUV. He saw one man running from the scene, with a second man chasing him. The man giving chase fired one shot at the man running away, then fired into Daniel Ellis' SUV. The vehicle was beneath a street light. He thought he saw 6 or 7 shots fired. He identified Jones as the shooter. He had seen Jones on previous occasions and saw his face the night of the shooting when Jones turned after shooting Ellis to run around the front of the SUV to jump into Yvonne Ellis' car. He saw Jones holding two guns, but believed he had fired only one of the guns. He said Jones was wearing a white t-shirt and jeans at the time of the shooting. He said the jeans were so loose that Jones had almost fallen. Jones pulled up the jeans and got into the back seat on the drivers' side.

Attorney Ross Barnett, who had represented Jones at the preliminary hearing testified for the defense that Summerlin, in an interview had identified Jones as the shooter, but described the shooter as someone much shorter than Jones, saying the top of his head came to the top of the window of Daniel's SUV.

Lee Wade, a life long friend of Jones, who also did some investigative work for Barnett, confirmed Barnett's testimony regarding Summerlin's description of a shooter that was about the height of the SUV. He also testified that Jones called him on the night of the shooting to come pick

him up in Ackerman at the Ackerman Motel. Wade drove Jones and Parks to Jones' mother's home and then to his girlfriend's home. He testified that Jones was wearing a blue shirt and Parks was wearing a white t-shirt. On cross-examination he testified that Jones and Parks told him they had a bag of marijuana on them. He was shown a picture of Parks when he was arrested wearing a dark blue shirt, but claimed he was unable to identify Parks because he did not have his reading glasses.

Jones' girlfriend testified that Jones had on a dark blue shirt when he arrived at her home. She said he took off the shirt and jeans and left them at her place. She said she showed the police the clothes he had on but that they failed to take the clothes. She said James wore his jeans loose, but not loose enough to be hanging down. Jones was arrested the morning after the crime. She identified a picture of James when he was arrested wearing a white t-shirt.

Latricia Wilson was one of the two women in Jones' car prior to the shooting. She testified that Jones was wearing a striped shirt and that Butler and Parks each had a gun in the car on the way to Kosciusko. She claimed Jones was wearing a blue shirt when he left the car, but admitted she was not paying attention and he could have left his shirt in the car without her noticing. She did not see Jones with a gun, nor did she witness the shooting. She saw Jones, Butler and Parks move away from the car all at the same time, but could not see what they were doing from where she was in Jones' car. She heard shots and ducked. She heard a car's tires squealing. She and the other woman emerged from Jones' car to find Daniel shot, all three men they had arrived with gone and witnesses Summerlin and George on the scene.

Tim Pritchard, with the Ackerman Police department testified to recovering Yvonne's car and that the car was located about three-quarters of a mile from the Ackerman Motel.

5

The trial court directed a verdict in Jones' favor on the capital murder charge relating to the death of Haymon. The jury found Jones guilty of the murder of Daniel Ellis and of the armed robbery of Yvonne Ellis.

1. Sufficiency of the evidence

Jones challenges the sufficiency of the evidence to support his conviction and also asserts that the verdict is against the overwhelming weight of the evidence. When faced with an insufficiency of evidence claim, a federal court on habeas review must remember both its limitation, *i.e.*, it may not "make its own subjective determination of guilt or innocence," *Jackson v. Virginia*, 443 U.S. 307, 320 n.13, 99 S. Ct. 2781, 2789 n. 13, 61 L.Ed. 2d 560 (1979), and in its function: "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319, 99 S. Ct at 2789. (citations omitted). The court is not at liberty to substitute its conclusions for those of the jury. Applying that standard, the undersigned finds the record contains not just sufficient but ample evidence from which a rational trier of fact could have found Jones' guilty of both the armed robbery and the murder beyond a reasonable doubt. Therefore, this claim should be denied as without merit.

2. The in-court identifications

Jones suggests that the in-court identifications violated his constitutional rights because they were impermissibly suggestive. He asserts that the witnesses were allowed to identify him as the shooter, though they supposedly did not identify him to the police as the shooter on the night of the incident. Angela Barton and Daniel Summerlin made their identification of the defendant without contemporaneous objection during the trial. This claim is procedurally barred. *Sayre v. Anderson*,

238 F.3d 631, 634 (5th Cir. 2001); *Wiley v. Puckett*, 969 F.2d 86, 103 (5th Cir. 1992). Nor does the record support the assertion that the witnesses were unable to identify Jones as the shooter on the night of the incident. Both Summerlin and Officer Dew testified that Summerlin reported Jones as the shooter to law enforcement immediately after the shooting. Barton testified that she had no doubt on witnessing the shooting that Jones was the shooter. Barton went to the police and gave a statement two days after the incident. She testified that she had said that Jones was the one doing the shooting at this initial interview. Rochelle George's testimony was subject to objection. This witness had attended the preliminary hearing and was prepared to say that of the three defendants, based on height and build, the shooter had to be Jones. The trial judge restricted her to testimony to saying that Jones was of the same height and build as the man she saw shoot Daniel. There was nothing impermissibly suggestive about any of these identifications, nor anything unreasonable about the facts determined by the Mississippi courts, nor the application of federal law to justify interference with that court's conclusion. This claim should be denied.

      3. Exclusion of the written statement of Angela Barton

Jones claims that the trial court committed error when it refused to admit the statement given by Barton to the police. This claim presents no constitutional issue on its face. *Gilmore v. Taylor*, 508 U.S. 333, 113 S. Ct. 2112, 124 L.Ed.2d 306 (1993) (O'Connor, J. concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas"). *Id* at 348-9, 113 S. Ct at 2121. Habeas corpus jurisdiction is invoked with such a claim solely on due process grounds, if at all. "[E]rrors of state law, including evidentiary errors, are not cognizable in habeas corpus as such." *Derden v. McNeel,* 978 F.2d 1453, 1458 (5th Cir. 1992)(citing *Estelle v McGuire*, 502 U.S. 62, 67, 112 S. Ct. 475, 480, 116 L.Ed.2d 166 (1991).

7

"Errors of state law rise to constitutional dimension only if they so infused the trial with unfairness as to deny due process of law." *Derden,* 978 F.2d at 1458 (citing *Lisenba v. California*, 314 U.S. 219, 228, 62 S. Ct. 280, 286, 86 L. Ed. 166 (1941).

In Jones' case there was clearly no denial of due process. His counsel cross-examined Barton at length and without interference about perceived inconsistencies including the fact that her out-of-court statement included hearsay. The jury heard Barton testify and heard her testify not merely that her testimony was not identical to the statement, but the specifics of what was contained in the statement. While the judge did not admit a paper copy of the statement into evidence, the contents of the statement were presented to the jury. This claim does not set out any constitutional error.

4. Closing argument

Jones alleges that the closing argument was improper in two respects and that his attorney's objections should have been sustained and the motions for mistrial granted. In his closing the prosecutor stated, " And I beg counsel for the defendant to come up here and submit to you or put some proof on that would impeach or show y'all how Miss George's identification has been impeached. None whatsoever." Jones' trial counsel objected on the basis that the comment improperly sought to impose the burden of proof on Jones and moved for a mistrial. On direct appeal and before this court, Jones asserts that the comment was improper for a different reason, i.e., that it was an improper comment on Jones' failure to testify. The Mississippi Court of Appeals found this argument procedurally barred as it sought to assert a different argument on appeal from that presented at trial. Because the Mississippi courts found this argument procedurally barred by an adequate and independent procedural rule and because the petitioner has made no showing that this procedural bar is not consistently applied by the Mississippi courts to similar cases, this ground is procedurally

8

barred in this court as well. *Sayre v Anderson*, 238 F.3d 631, 634 (5th Cir. 2001). Alternatively the Mississippi Court of Appeals has not committed an error, much less deprived Jones' constitutional rights by an unreasonable finding of facts or application of law. Every comment on the absence of proof or impeachment by a prosecutor is not a comment of the failure of a defendant to testify. The comment was on the failure to impeach George's limited "same size, same shape" identification. Given the two direct identifications by Summerlin and Barton, the comment regarding George is simply insignificant on this record.

The prosecutor also made a comment at the close of the first part of his argument that, "[Y]ou cannot tolerate the James Jones of the world." Jones' trial counsel objected that this amounted to any improper personal vilification of the defendant and moved for a mistrial. The Mississippi Court of Appeals found that taken in context the comment was not an improper "send a message" argument. The concurring opinion found the comment to be improper, but harmless in light of the overwhelming evidence against Jones. The undersigned agrees that even if the comment were error, the overwhelming proof of Jones' guilt makes any error harmless. This was an isolated comment in a summation focusing on the evidence. The refusal of the Mississippi court to reverse cannot be said to be an unreasonable finding of facts, nor application of federal constitutional law to the facts. *United States v.Young*, 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed. 2d 1 (1985).

The undersigned recommends that the petition be dismissed with prejudice.

The parties are referred to 28 U.S.C. 636(b)(1) and Local Rule 72.2(D) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations. Objections are required to be in writing and must be filed within ten days of this date. Failure to file written objections to the proposed finding and recommendations contained in this report within ten

9

days from the date of filing will bar an aggrieved party from challenging on appeal both the proposed factual findings and the proposed legal conclusions accepted by the district court *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Petitioner is directed to acknowledge receipt of this report and recommendation by signing the enclosed acknowledgment form and returning it to the court within ten days of this date. Petitioner is warned that failure to comply with the requirements of this paragraph may lead to the dismissal of this lawsuit under F.R.Civ.P. 41(b) for failure to prosecute and for failure to comply with an order of the court.

This the 17th day of August, 2007.

/s/ JERRY A. DAVIS
UNITED STATES MAGISTRATE JUDGE